UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-CV-12102

JAMES FAHERTY, LINDA FEIBEL, AND MOE TARKINOW, on behalf of
themselves, and those similarly situated

v.

CVS PHARMACY, INC.

MEMORANDUM AND ORDER ON MOTION
FOR CLASS CERTIFICATION

March 9, 2011

STEARNS, D.J.

In 2008, Linda Feibel, a Massachusetts resident, purchased AirShield, a store-brand imitator of the popular over-the-counter cold remedy Airborne. AirShield is manufactured and marketed by defendant CVS Pharmacy, Inc. (CVS). Disappointed with AirShield's efficacy, on December 11, 2009, Feibel (joined by two other dissatisfied consumers[1]) filed a class action Complaint against CVS on behalf of themselves and "all other persons similarly situated." On November 8, 2010, Feibel moved pursuant to Fed. R. Civ. P. 23 to certify a nationwide or, alternatively, a statewide class of "[a]ll persons who purchased CVS's store-brand Airborne equivalent

---

[1] These two named plaintiffs are no longer parties to the lawsuit. Plaintiff Tarkinow's claims were dismissed by stipulation on October 6, 2010, and plaintiff Faherty has since passed away.

AirShield from August 1, 2004 to [the] present . . . ." A hearing on the motion was held on December 22, 2010. For the reasons to be stated, the motion to certify a statewide class of Massachusetts residents will be provisionally allowed.

BACKGROUND

Feibel's lawsuit alleges violations of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1 - 6-13.1-5.2 (Count 1); the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 9 (Count II); breach of express warranty in violation of R.I. Gen. Laws § 6A-2-313 (Count III) and of Mass. Gen. Laws ch. 106, § 2-313 (Count IV); breach of the implied warranty of merchantability in violation of R.I. Gen. Laws § 6A-2-314 (Count V) and of Mass. Gen. Laws ch. 106, § 2-314 (Count VI); breach of the implied warranty of fitness for a particular purpose in violation of R.I. Gen. Laws § 6A-2-315 (Count VII) and of Mass. Gen. Laws ch. 106, § 2-315 (Count VIII); and common law claims of unjust enrichment, deceit and/or misrepresentation, and negligent misrepresentation (Counts IX - XII).

To date, two courts – one federal, the other state – have certified nearly identical statewide classes in connection with CVS's marketing of AirShield. *See Harvey v. CVS Pharmacy, Inc.*, No. 08-05058 (C.D. Cal. filed Aug. 1, 2008) (*Harvey* Action); *Finley v. CVS Pharmacy, Inc.*, No. 08-616 (St. Clair Cnty., Ill. filed Dec. 1, 2008) (*Finley* Action).

## DISCUSSION

### *Rule 23*

To satisfy Rule 23, the nominee class representative must establish the four elements of Rule 23(a) and one of the three elements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997).

### *Rule 23(a)*

The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* at 613. Although at least one core issue of fact or law must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action. *See In re Lupron® Mktg. and Sales Practice Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005), citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995).

### *Rule 23(a)(1): Numerosity*

Although Feibel cannot quantify the class size at this time with any precision, she estimates that both the statewide and the nationwide class will be comprised of "thousands of persons." Compl. ¶ 33. As a practical matter, the numerosity requirement is met whenever the joinder of members of a proposed class is not feasible. That is the case here, and CVS does not contend otherwise.

### *Rule 23(a)(2): Commonality*

To satisfy the commonality requirement, there must exist common questions of law or fact impacting each of the members of the proposed class. "The threshold of 'commonality' is not high. Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (internal citations omitted). For that reason, the commonality requirement has been described as a "low hurdle." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007) (citation omitted).

Feibel submits that the members of both of the proposed classes share the following common questions of law and fact: (1) whether CVS engaged in unfair and/or deceptive practices in connection with the marketing, packaging, labeling, distribution and/or sale of AirShield (collectively, "these activities"); (2) whether CVS breached express warranties in connection with these activities; (3) whether CVS breached implied warranties in connection with these activities; (4) whether CVS intentionally or negligently made misrepresentations in connection with these activities; (5) whether CVS's practices in connection with these activities unjustly enriched CVS at the expense of and to the detriment of Feibel and other putative class members; (6) whether CVS participated in and pursued the common course of conduct alleged; (7) whether

4

CVS's conduct injured Feibel and other putative class members, and if so, the extent of the injury; and (8) the scope of the injunctive relief, if any, that should be entered. *See* Pls.' Mem. for Class Certification (Pls.' Mem.) at 10-11.

Feibel argues, as did plaintiffs in the *Finley* and *Harvey* Actions, that the "commonality requirement is easily satisfied as CVS uniformly misrepresented during the relevant class period that AirShield is an effective shield and defense against airborne germs that cause such illnesses as the cold and flu." *Id*. at 11. CVS is silent on this point, presumably agreeing that at least for present purposes, the commonality threshold is met.

### *Rule 23(a)(3): Typicality*

"The representative plaintiff satisfies the typicality requirement when [his or her] injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). The purpose of the typicality requirement is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998). The alignment with absent class members need not, however, be perfect. *See In re Credit Suisse*, 253 F.R.D. at 23. That damages may differ among

5

the various class members, for example, "is of little consequence to the typicality determination when the common issue of liability is shared." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 28 (D.D.C. 2001), quoting *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 9 (D.D.C. 1992).

Feibel purchased AirShield in 2008 from a CVS Pharmacy in Stoughton, Massachusetts, "believing that AirShield provides protection against airborne germs and the illnesses they cause." Pls.' Mem. at 12; *see also* Compl. ¶ 5. She argues that the claims of all putative class members arise out of the same deceptive conduct on the part of CVS and are based on the same legal theories. The courts in the *Finley* and *Harvey* Actions found typicality on the basis of largely similar facts. *See Finley* Certification Order at 2; *Harvey* Certification Order at 7-8.

CVS contends, however, that Feibel's claims are not typical of the proposed class because her claims "are premised on alleged misrepresentations that did not appear on the product she purchased." Def.'s Opp'n to Mot. for Class Certification (Def.'s Opp'n) at 7. CVS explains that the pharmacy in question sold three different versions of AirShield: (1) effervescent tablets, which made up most of its sales; (2) a powdered, non-effervescent drink mix, which is the type Feibel purchased; and (3) a chewable tablet that could be taken without water. *Id.* at 2-3. According to CVS, the packaging and labeling on the three different versions of AirShield are not identical and

6

have gone through "considerable" permutations in their content. *Id.* at 3. CVS points out (although it seems more like a quibble than a legitimate qualm) that the product label (as Feibel remembers it) instructed consumers to use the product to avoid infection in crowded places, while the label for the powdered drink mix that Feibel purchased did not contain any similar instruction.[2]

The import of the argument as framed by CVS is that Feibel, because she could not have read the promise of providing protection from fellow humans in close quarters, cannot prove reliance, a necessary element for a recovery on a breach of express warranty. CVS claims that in her deposition Feibel more or less conceded that she did

---

[2] With respect to the effervescent tablets, CVS claims that the first iteration of the product label stated that AirShield contained an "immune boosting formula," was intended for use in schools, airplanes, offices, health clubs, theaters, and restaurants, and invited purchasers to "[c]ompare [it] to Airborne®." Grant Pill Decl. - Ex. 2. In 2007, the claim of an "immune boosting formula" was revised to read "supports healthy immune system." *Id.* ¶ 5, Ex. 5. According to CVS, the label for the powdered drink mix encouraged consumers to "take [AirShield] anywhere" rather than in specifically listed public settings. *Id.* at Ex. 3. After CVS switched manufacturers in 2008, the labeling changed again for both the tablets and the drink mix. New artwork advertised that AirShield "supports your immune system" and invited consumers to "compare [AirShield's formula] to Ingredients in the Leading Brand," while omitting the suggested list of locations for its preferred use. *See id.* at 10, 12, Ex. 6. Finally, with respect to the chewable tablets, CVS claims that the label never included the words "compare to Airborne®" or their equivalent because Airborne did not make a comparable tablet. *Id.* ¶ 7, Ex. 4. The label did, however, advise consumers to "take [AirShield chewable tablets] anywhere." *Id.*

not consider any of the allegedly false representations made on behalf of AirShield in deciding to purchase the drink mix product. Feibel, for example, testified that she attached no significance to the name "AirShield" and stated that she would have purchased the product even if it had had a different name. Def.'s Opp'n at 10. Nor did she give any weight to the artwork on the packaging because it was merely "advertising." *Id*. Finally, CVS claims that Feibel does not completely reject Airshield's immunity-boosting claims because she continues to take 1,000 mg daily of one of its key ingredients, Vitamin C, to ward off colds. *Id*.

CVS's objections to the typicality of Feibel's claims are ultimately much ado about nothing, or at least very little. Regardless of whether Feibel purchased AirShield because the label assured her that she could take it "anywhere," and not just on an airplane, or because the box exhibited a particular cartoon or not, Feibel's experience is prototypical of the claims asserted in this candidate class action. In 2007, Feibel had purchased Airborne based on its maker's representations that it would boost her immune system and prevent illness. Feibel Dep. at 23:13-21. A year later, Feibel was at her local CVS Pharmacy because she planned to fly to California, and she was "hoping to prevent illness." *Id*. at 34:6-10. She noticed CVS's AirShield products because they were placed side by side with Airborne products on the store shelf. *Id*. at 36:18-21. She states that she decided to buy AirShield instead of Airborne after

making the invited comparison of the ingredients because AirShield "claimed to do the same thing" as Airborne at a cheaper price. *Id.* at 36:21-37:2, 26:23-27:9, 40:22-41:7. Moreover, the AirShield drink mix that she did buy touted itself as "immune boosting" and called on would-be purchasers to "compare to Airborne®." *See* Patrick Sheehan Decl. - Ex. E. This is sufficient to incorporate by reference the representations and warranties on Airborne's own packaging. Feibel behaved exactly the way CVS intended when it traded on the heavily advertised "immunizing" effects of Airborne products. *Cf. Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201-202 (1st Cir. 1996).

### *Rule 23(a)(4): Adequacy*

Under the fourth and final requirement of Rule 23(a), the named plaintiff must show that the proposed action will fairly and adequately protect the interests of the class. "The [adequacy] rule has two parts. The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Co.*, 780 F.2d 124, 130 (1st Cir. 1985). In assessing the qualifications of class counsel, the court is to consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience with class actions and

9

other complex litigation involving claims of this type, as well as counsel's knowledge of the applicable law and the resources counsel is willing to commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As to the suitability of Feibel as a class representative, she has no apparent conflict with any potential member of the class and has shown a desire to actively and vigorously participate in the prosecution of the action. She has assisted in the gathering of information for purposes of compliance with Fed. R. Civ. P. 26(a), has sat for a deposition, and has maintained regular communication with proposed class counsel. CVS (appropriately) has not objected to Feibel's satisfaction of the adequacy requirement.

With respect to the class counsel nominees, the court notes that the firms Whatley Drake & Kallas, LLC, Reese Richman LLP, and D'Angelo & Hashem, LLC, have effectively litigated this action to date as well as the *Harvey* Action (in which Whatley Drake & Kallas and Reese Richman have been appointed class counsel). CVS does not interpose an objection to the involvement of any of the three law firms.

*Rule 23(b)(3)*

Rule 23(b)(3) requires, in pertinent part, that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy.³

*Choice of Law*

The parties disagree over the law to be applied, either in a statewide or nationwide class action. CVS believes the law of Massachusetts should apply while Feibel would prefer the law of Rhode Island (to the extent that there may be differences). A federal court applies the choice-of-law framework of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). *See A.M. Capen's Co., Inc. v. Am. Trading and Prod. Corp.*, 74 F.3d 317, 320-321 (1st Cir. 1996) (discussing Restatement (Second) of Conflict of Laws § 188 (Law Governing in Absence of Effective Choice by the Parties) and § 145 (Torts). It is, however, the case that "[a] federal court sitting in diversity need not make a finding regarding which state's law is to be applied where the case's resolution would be identical under either state's law." *Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 28 (1st Cir. 1998).

Under Massachusetts choice-of-law rules, courts employ a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622,

---

³ CVS does not argue that Feibel fails to meet the test of Rule 23(b)(3). For the sake of completeness, I will rely – as do plaintiffs – on Judge Nguyen's observation in the *Harvey* Action that an overarching theme of "misrepresentation was inherent in the very name and nature of the product" and therefore predominates. *See Harvey* Class Certification Order at 9.

631 (1985). Massachusetts choice-of-law analysis is guided by the Restatement (Second) of Conflict of Laws. *Id.* at 632. Here, Section 148 – the rule for "Fraud and Misrepresentation" – provides the relevant guidance.

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> > (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> > (b) the place where the plaintiff received the representations,
> > (c) the place where the defendant made the representations,
> > (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> > (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> > (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflicts of Laws § 148(2) (1971).

While the place of business of the parties (d), lends some support to a finding that Rhode Island law applies, the balance of the factors sharply tip in favor of Massachusetts law. Specifically, the place where Feibel acted in reliance upon the defendant's representations (a), the place where Feibel was exposed to the representations (b), and the place where the representations were made (c) were all in

Massachusetts. Moreover, as CVS points out, given Feibel's citizenship, "Massachusetts' interest in applying its own laws to protect [its] consumers would outweigh any secondary interest Rhode Island might have in policing the conduct of [its] corporations in other states." Def.'s Opp'n at 15. This is also true with respect to putative class members who are domiciled outside of Massachusetts – in their case, the consumer protection laws of their respective home states would apply for the same reason that Feibel's case falls under the laws of Massachusetts. *See In Re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005) ("[C]onsumer protection statutes are designed to protect consumers rather than to regulate corporate conduct.").

The choice-of-law analysis militates strongly against the certification of a nationwide class as that would require the certifying court to apply a state-by-state legal analysis for the class members who reside in the 43 States (plus the District of Columbia) in which CVS does business. It is not that it cannot be done,[4] but the

---

[4] In *In re WellNx Mktg. and Sales Practices Litig.*, 673 F. Supp. 2d 43 (D. Mass. 2009), this court, in its capacity as a Multi-District Litigation (MDL) transferee judge, analyzed deceptive trade practices statutes for four different states . If any of the *WellNx* cases consolidated by the MDL Panel for pretrial proceedings in this district were to go to trial, the case would be transferred back to the court of origin. *See* 28 U.S.C. § 1407(a); *see also Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Thus, in the MDL context, there is no risk (as would be the case here) of a judge having to instruct a jury on the consumer protection statutes of forty-four

13

intricate nature of the task and the potential for juror confusion has persuaded most courts that it is unwise to do it. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules. . . . Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").[5]

ORDER

For the foregoing reasons, Feibel's motion for nationwide class certification is DENIED. Feibel's motion for statewide class certification is provisionally ALLOWED. For present purposes, the class will consist of all Massachusetts residents who purchased CVS's store-brand Airborne equivalent AirShield at a Massachusetts-based CVS Pharmacy from August 1, 2004 to the date of the filing of the Complaint.[6] The parties will submit a joint proposed scheduling order regulating discovery (with particular attention to defining the membership of the eventual class) within twenty-one

---

different jurisdictions.

[5] A further complication arises from the fact that statewide class actions involving AirShield purchasers have already been certified in California and Illinois.

[6] Excluded from the proposed class are officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, and their legal representatives, heirs, successors, or assigns and any entity in which they have or have had a controlling interest.

(21) days of the date of this Order.[7]

        SO ORDERED.

        /s/ Richard G. Stearns

        _____
        UNITED STATES DISTRICT JUDGE

---

[7] CVS argues that the scope of the class should be narrowed to exclude Massachusetts purchasers of AirShield who received refunds in one form or another as a result of a prior settlement agreement between CVS and the Federal Trade Commission. The court is inclined to agree on principle, but as Feibel points out, the details of the settlement and the scope of any releases or waivers of claims (or even the number of persons affected) are not currently part of the record and will require additional discovery and briefing.